In re Michael W.J. WHELAN, Debtor.

Sterling Factors, Inc., Plaintiff,

v.

Michael W.J. Whelan, Defendant.

Edward T. Schaner, Debtor.

Sterling Factors, Inc., Plaintiff,

v.

Edward T. Schaner, Defendant.

Bankruptcy Nos. 98–73772, 98–73836. Adversary Nos. 98–6655, 98–6659.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

June 30, 1999.

J. Bertram Levy, Weinstock & Scavo, PC, Atlanta, GA, for plaintiff.

John R.M. Whelan, Decatur, GA, for defendant.

## *ORDER*

JOYCE BIHARY, Bankruptcy Judge.

These two adversary proceedings are before the Court on plaintiff's motions for summary judgment. Plaintiff Sterling Factors, Inc. ("Sterling Factors") filed adversary proceedings against Michael Whelan and Edward Schaner, asking the Court to determine that a default judgment obtained by Sterling Factors in the Superior Court of DeKalb County is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6). These matters are core proceedings under 28 U.S.C. § 157(b)(2)(I).

The question presented is whether the doctrine of collateral estoppel, or issue preclusion, applies and entitles plaintiff to a summary judgment on any of the dischargeability claims. The judgment obtained by Sterling Factors is in the amount of $748,244.31, and resulted from a failure by defendants Whelan and Schaner to respond to some interrogatories and document requests. Plaintiff argues that the doctrine of collateral estoppel applies and these judgments should be declared nondischargeable as a matter of law. Defendants filed briefs in opposition to the motions for summary judgment, which briefs raised a number of questions about the facts leading up to the entry of the default judgment. The Court held a hearing on April 28, 1999, and gave the parties an opportunity to file supplemental briefs on the issues addressed at the hearing. After carefully considering the parties' briefs, the record, argument of counsel, and the applicable law, the Court concludes that these summary judgment motions should be DENIED.[1]

## A. *FACTUAL BACKGROUND*

The facts relating to the entry of the default judgment by the Superior Court of DeKalb County, Georgia are as follows. On January 19, 1996, Sterling Factors filed a five-count complaint in the Superior Court of DeKalb County against nine defendants, including Edward Schaner and Michael Whelan (the "DeKalb County Litigation"). The other seven defendants were CraftMasters, Inc., Equity Recovery Services, Inc., Remedial Labor Solutions, Inc., R.A. Scott General Contractors, Inc., Randall Scott, Jeffrey Teague, and T.L. Moore. Defendants Whelan, Schaner, Equity Recovery Services, Inc., and Remedial Labor Solutions, Inc., filed an Answer on February 21, 1996, through counsel, John R.M. Whelan. Attorney John R.M. Whelan is defendant Michael Whelan's father.

The litigation grew out of the financing of a construction project.

A year later, on March 27, 1997, Sterling Factors filed an amended complaint adding two more counts to the complaint. The amended complaint thus contained seven counts. Count I asserted a claim for specific performance against defendant Equity Recovery Services, Inc. Count II requested a restraining order, an injunction, an accounting and a receivership of some of the defendant corporations. Count III asserted a claim for money received against defendant CraftMasters. Count IV asserted that all the defendants made fraudulent submissions of contract advances or purchase orders, resulting in plaintiff funding money "in an amount to be proven at trial." Count V asserted a breach of contract claim against defendant Remedial Labor Solutions, Inc. and Equity Recovery Services, Inc. and asserted that damages would be "proven at trial." Counts VI and VII requested that the Court pierce the corporate veils of defendants Equity Recovery Services, Inc. and Remedial Labor Solutions, Inc., to allow Sterling Factors to recover any amounts owed by these two corporations from Messrs. Whelan and Schaner. The first five counts were included in the original complaint.

During the year between the filing of the original complaint and the amended complaint, the defendants had produced documents and attended depositions. By the time the amended complaint was filed, discovery had apparently closed, but Sterling Factors had moved to reopen discovery, which motion was granted on July 3, 1997. On July 8, 1997, Sterling Factors served Michael Whelan and Edward Schaner with Plaintiff's Second Interrogatories and Plaintiff's Second Request for Production of Documents. Pursuant to O.C.G.A. §§ 9–11–33(a)(2) and 9–11–

---

1. Adversary Proceeding No. 98–6659, *Sterling Factors v. Edward Schaner,* is assigned to the Honorable A. David Kahn. On April 22, 1999, Judge Kahn transferred plaintiff's summary judgment motion to the undersigned, since it is virtually identical to the motion filed in Adversary Proceeding No. 98–6655, *Sterling Factors v. Michael Whelan.*

34(b)(2), the defendants had thirty (30) days to respond. John Whelan, as counsel for Michael Whelan and Edward Schaner, and J. Bertram Levy, as counsel for Sterling Factors, submitted a Consent Order extending discovery until October 30, 1997. Mr. Whelan had requested the extension, and the Consent Order provided, in pertinent part, as follows:

> The parties state that discovery has been commenced and pursued diligently, but the parties are in need of additional time to complete their responses and to pursue additional discovery. *Defendants further show that their counsel has been tending to a spouse with a chronic illness that may be nearing its terminal stages and for that reason has been unable to complete discovery within the discovery period. All parties have agreed to extend discovery for an additional sixty (60) days in which to complete outstanding discovery.* (Emphasis added)

Plaintiff has submitted a letter dated October 8, 1997, in which plaintiff's counsel wrote attorney Whelan that although the parties agreed to extend discovery, Michael Whelan and Edward Schaner were "long overdue" in their responses and that if Sterling Factors did not receive the responses in the following three days, Sterling Factors would "file the appropriate Motions to Strike your client's [sic] Answer, as well as for sanctions and/or to compel production of the requested information and documents." This letter dated October 8, 1997, was written twenty-two (22) days before the October 30, 1997 deadline in the Consent Order extending discovery. On October 22, 1997, Sterling Factors filed a motion in the Superior Court of DeKalb County to strike the answer of defendants Whelan and Schaner, or in the alternative, a motion for sanctions and to compel answers.[2]

In the brief Sterling Factors filed in support of its motion to strike defendants' answers and enter a default, Sterling Factors asked the Superior Court of DeKalb County to hold a hearing on the motion. Sterling Factors' brief argued that the Court was authorized to strike the answers of a party who fails to respond to discovery where it finds a conscious or intentional failure to act, but the brief states: "All that is required is a motion, notice and hearing," citing *Stolle v. State Farm Mut. Auto. Ins. Co.*, 206 Ga.App. 235, 424 S.E.2d 807 (1992) and *Cook v. Lassiter*, 159 Ga. App. 24, 282 S.E.2d 680 (1981). In the next paragraph, Sterling Factors states "Plaintiff requests this Court to provide the *Defendants opportunity for a hearing* and then to grant Plaintiff's Motion to Strike Defendants' Answers." (emphasis added). Finally, in the conclusion, Sterling Factors' first request is that the Court "hold a hearing." Notwithstanding these requests, there was never a hearing in DeKalb County on Sterling Factors' motion to strike. Instead, plaintiff's counsel submitted an order which stated that defendants had not filed a brief in opposition to the motion to strike, and provided that "the Court grants Plaintiff's Motion to Strike the Answers of Defendant [sic] Ed Schaner and Michael Whelan and default shall be entered against these Defendants in amounts to be determined by affidavit submitted by Plaintiff." The Honorable Clarence Seeliger signed this Order on December 11, 1997.

---

2. It is not clear whether defendants Whelan and Schaner were really "long overdue" in their responses to plaintiff's second interrogatories and second request for production of documents at the time plaintiff's counsel wrote this letter and filed the motion to strike the defendants' answers. The parties submitted an unsigned and undated copy of a consent order extending the time for discovery and the time to complete outstanding discovery until October 30, 1997. And yet Sterling Factors filed its motion to strike before this October 30 deadline, on October 22, 1997. It further referenced the letter dated October 8, 1997, from plaintiff's counsel to Mr. Whelan threatening to file the motion to strike if the responses were not forthcoming in three days. This would seem to contradict this consent order that gave the parties until October 30, 1997, "to complete outstanding discovery."

In a supplemental brief filed in bankruptcy court, counsel for Sterling Factors submitted an affidavit to explain how the order granting the motion to strike and entering a default was prepared by Sterling Factors' counsel and entered by Judge Seeliger, without the hearing that plaintiff had requested. The affidavit is by Judge Seeliger's law clerk, Carol Willingham. Ms. Willingham states in her affidavit that Sterling Factors' counsel contacted her sometime in November, 1997, to ask whether the "request for oral argument" had been granted. She determined from the docket that counsel for defendants Schaner and Whelan had not filed a written response to the motion to strike. She called attorney Whelan and left a message "indicating that [she] was calling ... for Judge Seeliger about the instant case and motion." When she received no response to the telephone call, she called Sterling Factors' counsel and requested that he forward an order striking the answers of defendants Schaner and Whelan and granting the default. She presented Sterling Factors' counsel's proposed order to Judge Seeliger who signed the order on December 11, 1997.

Mr. Whelan stated that he expected a hearing to be scheduled, and he expected to respond to the motion to strike at that time. Mr. Whelan filed an affidavit on June 15, 1999, regarding the telephone message from Judge Seeliger's office. In his affidavit, he states that on or about December 10, 1997, a telephone message was recorded on his office recorder, but he was not in the office that day. The message was from a lady who stated that she was employed in Judge Seeliger's office, that the Judge would handle the Motion for Sanctions or Striking Pleadings the next day, and that if he intended to do something about it, he had better do it immediately. As previously stated, Judge Seeliger signed the order presented by plaintiff's counsel on December 11, 1997. Mr. Whelan states in his affidavit that he heard the telephone message for the first time a day or two after the message was

given and that he also found a copy of Judge Seeliger's December 11, 1997 Order, granting plaintiff's motion, in his incoming mail. He immediately filed a notice of appeal. The appeal was dismissed by the Georgia Court of Appeals on February 13, 1998, as interlocutory, because the trial court's order left pending the damages determination.

On July 9, 1998, Sterling Factors' president filed an affidavit in the Superior Court of DeKalb County, stating that Sterling Factors was owed $717,877.81 for funds advanced to corporations that were alter egos of defendants Schaner and Whelan. The affidavit also states that plaintiff incurred $30,366.50 as attorney's fees. On that same date, July 9, 1998, Judge Seeliger entered a default judgment prepared by Sterling Factors' counsel in the amount of $748,244.31.

Counsel for defendants Whelan and Schaner contends that he did not receive a copy of the July 9, 1998 affidavit on damages or the July 9, 1998 Order entering a judgment against his clients. In fact, at the hearing in bankruptcy court on the summary judgment motions, he stated that he was fully anticipating filing another appeal as soon as the final judgment was entered, but he received nothing. He made periodic reviews of the file in the Clerk's office in the Superior Court of DeKalb County, and in one of these reviews, he came across the July 9, 1998 final order. He does not recall the date that he saw the order, but he recalled that it was in August of 1998 and past his time to appeal. He filed these petitions for bankruptcy relief on behalf of Mr. Whelan and Mr. Schaner respectively on August 13, 1998 and August 17, 1998.

At the hearing on the motions for summary judgment, the Bankruptcy Court asked counsel for Sterling Factors if he had ever served the affidavit on damages on defendants' counsel. In a supplemental brief filed on May 12, 1999, Sterling Factors' counsel states he has been unable to

confirm that he ever served a copy of the affidavit on damages on defendants' counsel. It is undisputed that there was never any hearing in DeKalb County on damages.

## B. *LEGAL ANALYSIS*

■ Collateral estoppel prohibits the relitigation of issues that have been adjudicated in a prior lawsuit, and collateral estoppel principles apply to dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). When determining the preclusive effect of state court judgments, bankruptcy courts should apply the collateral estoppel law of that state. *See St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675–76 (11th Cir. 1993). *See also Bush v. Balfour Beatty Bahamas, Ltd.*, 62 F.3d 1319, 1323 n. 6 (11th Cir.1995). Georgia collateral estoppel is available when there has been a prior adjudication of the same issues by the parties or their privies, even if the prior adjudication was on a different cause of action. *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 866–67, 463 S.E.2d 5, 7–8 (1995); *Blakely v. Couch*, 129 Ga.App. 625, 627, 200 S.E.2d 493, 495 (1973). Under Georgia law, the following elements must be established before collateral estoppel may be involved: (1) there must be an identity of issues between the first and second actions; (2) the duplicated issue must have been actually and necessarily litigated in the prior court proceeding; (3) determination of the issue must have been essential to the prior judgment; and (4) the party to be estopped must have had a full and fair opportunity to litigate the issue in the course of the earlier proceeding. *Dement v. Gunnin (In re Gunnin)*, 227 B.R. 332, 336 (Bankr.N.D.Ga. 1998).

The key issue in these summary judgment motions revolves around the fourth element, i.e., whether defendants had a full and fair opportunity to litigate the issue in state court. However, before considering this fourth element, two aspects of this particular default judgment suggest that other elements of Georgia collateral estoppel are not present.

■ First, there is no identity of issues between the DeKalb County Litigation and plaintiff's claims in this adversary proceeding under § 523(a)(4) and § 523(a)(6) of the Bankruptcy Code Section 523(a)(4) makes nondischargeable a debt for defalcation by a fiduciary or embezzlement or larceny, and § 523(a)(6) makes nondischargeable a debt arising from a willful and malicious injury to person or property. The default judgment is based on Counts IV, VI and VII of plaintiff's amended complaint filed in DeKalb County. These claims asserted in the DeKalb County Litigation against defendants Whelan and Schaner do not contain the elements of either a § 523(a)(4) or a § 523(a)(6) claim. Thus, the state court default judgment has no collateral estoppel effect on these dischargeability claims, and plaintiff's summary judgment motion on its §§ 523(a)(4) and (a)(6) claims must be denied. All that remains is plaintiff's motion for summary judgment on the § 523(a)(2) claim.

Section 523(a)(2) prevents an individual debtor from discharging a debt for money, property, or services to the extent obtained by false pretenses, actual fraud, or a false representation. Under § 523(a)(2)(A), a creditor must prove: (1) the debtor made a false representation with intent to deceive the creditor; (2) the creditor relied on that representation; (3) his reliance was justifiable; and (4) the creditor sustained loss as a result of the representation. *Field v. Mans*, 516 U.S. 59, 74–75, 116 S.Ct. 437, 445–46, 133 L.Ed.2d 351 (1995); *City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277, 281 & n. 5 (11th Cir.1995).

■ The Court cannot find that the default judgment and the damages awarded were based solely on fraud. The judgment states that it is based on three counts of the amended complaint, Counts

IV, VI and VII. Count IV appears to set forth the elements of a fraud claim under § 523(a)(2)(A) of the Bankruptcy Code. Counts VI and VII, however, do not set forth claims that would give rise to a non-dischargeable judgment under any subsection of § 523 of the Bankruptcy Code. In fact, at the hearing on the motions for summary judgment, plaintiff's counsel acknowledged that the claims to pierce the corporate veil set forth in Counts VI and VII would not be involved in this dischargeability action. The default judgment entered on July 9, 1998, does not clearly apportion the damages among Counts IV, VI and VII. The affidavit submitted in the DeKalb County Litigation stated that the $717,877.81 was the amount owed by the corporations alleged to be alter egos, and these are the claims alleged in Courts VI and VII which do not give rise to a nondischargeable claim. The Eleventh Circuit has held "[i]f the judgment fails to distinguish as to which of two or more independently adequate grounds is the one relied upon, it is impossible to determine with certainty what issues were in fact adjudicated, and the judgment has no preclusive effect." *St. Laurent*, 991 F.2d at 676. *See also Miller v. Held (In re Held)*, 734 F.2d 628, 629 (11th Cir.1984) (collateral estoppel did not apply where the jury, based on the state court charge, could have based its decision on either one of two possible grounds); *Blashke v. Standard (In re Standard)*, 123 B.R. 444 (Bankr.N.D.Ga.1991). Since the default judgment fails to apportion the damages clearly among the three counts, making it impossible to find that the entire judgment is based on the nondischargeable fraud claim in Count IV, plaintiff's motion for summary judgment on the § 523(a)(2) claim should be denied.

█ Another important reason why collateral estoppel does not apply here is that defendants did not have a full and fair opportunity to litigate the issues in state court. Defendants were not given an opportunity to introduce any evidence as to

damages in the DeKalb County Litigation. Plaintiff simply submitted a short affidavit stating that it was owed $717,877.81 for funds advanced to corporations alleged to be alter egos of the defendants and that it had incurred attorneys fees in the amount of $30,366.50. Defendants' counsel represented to the bankruptcy court that he was never served with a copy of plaintiff's affidavit on damages, and plaintiff's counsel advised the bankruptcy court that he has no proof that he ever served defendants' counsel with the affidavit. It is undisputed that the Superior Court signed the order prepared by plaintiff's counsel entering a judgment in the amount of $748,244.31 on the same day the damages affidavit was submitted. Thus, defendants were not given any opportunity to introduce evidence as to damages prior to the entry of the judgment.

Plaintiff contends that Georgia law did not entitle these defendants to any notice or opportunity to be heard on the damages phase of the default judgment. The law suggests otherwise. Plaintiff's brief quotes only a portion of O.C.G.A. § 9–11–55(a) and omits from reference the pertinent parts of the statute. The statute in full reads as follows:

(a) *When case in default; opening as matter of right; judgment.* If in any case an answer has not been filed within the time required by this chapter, the case shall automatically become in default unless the time for filing the answer has been extended as provided by law. The default may be opened as a matter of right by the filing of such defenses within 15 days of the day of default, upon the payment of costs. If the case is still in default after the expiration of the period of 15 days, the plaintiff at any time thereafter shall be entitled to verdict and judgment by default, in open court or in chambers, as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a jury, *unless the action is*

*one ex delicto or involves unliquidated damages, in which event the plaintiff shall be required to introduce evidence and establish the amount of damages before the court without a jury, with the right of the defendant to introduce evidence as to damages and the right of either to move for a new trial in respect of such damages; provided, however, in the event a defendant, though in default, has placed damages in issue by filing a pleading raising such issue, either party shall be entitled, upon demand, to a jury trial of the issue as to damages. An action based upon open account shall not be considered one for unliquidated damages within the meaning of this Code section.* (Emphasis added) O.C.G.A. § 9–11–55(a).

If the action is one *ex delicto* or involves unliquidated damages, the statute clearly provides that the plaintiff is required to introduce evidence and establish the amount of damages, with the right of the defendant to introduce evidence as to damages and the right of either to move for a new trial in respect of damages. The statute further provides that if the defendant, though in default, has placed damages in issue by filing a pleading raising that issue, either party would be entitled to a jury trial on the issue of damages.

■ The amended complaint in the DeKalb County Litigation was an action *ex delicto* and it involved unliquidated damages. The claim in Count IV, based on fraud, is clearly a tort action and is therefore an action *ex delicto*. *Pelletier v. Schultz*, 157 Ga.App. 64, 67, 276 S.E.2d 118, 121 (1981); 27A Encyclopedia of Georgia Law *Torts* § 2 (1998). None of the Counts upon which the default is based (Counts IV, VI and VII) specifies an amount for damages. In fact, Count IV contains no dollar amounts and requests a judgment against the defendants "in an amount to be proven at trial." (Pl.'s First Am. & Verified Compl. ¶ 49.) Neither Count VI nor VII contains any dollar amount, but simply requests judgments against defendants Schaner and Whelan for "all monetary provisions of any Judgment" granted to the plaintiff against corporate defendant Equity Recovery Services, Inc. and Remedial Labor Solutions, Inc. (Pl.'s First Am. & Verified Compl. ¶¶ 65(a), 77(a).) Liquidated damages are "an amount certain and fixed, either by act and agreement of the parties, or by operation of law; a sum which can not be changed by the proof.... The word 'liquidated' ... means 'settled, acknowledged, or agreed'." *Jennings Enters., Inc. v. Carte*, 224 Ga.App. 538, 541, 481 S.E.2d 541, 544 (1997) (citations omitted). In a default, if the court is unable to ascertain the amount of damages without reference to evidence outside the pleadings, the amount is unliquidated and must be proven. *Hazlett & Hancock Constr. Co. v. Virgil Womack Constr. Co.*, 181 Ga.App. 25, 27–28, 351 S.E.2d 218, 220 (1986). Since the action in the DeKalb County Litigation was both *ex delicto* and involved unliquidated damages, plaintiff was required to introduce evidence on damages and defendants had the right to introduce evidence on damages. O.C.G.A. § 9–11–55(a).

Plaintiff cites three cases for the proposition that defendants Whelan and Schaner were not entitled to any trial on damages and were not entitled to any notice of plaintiff's submission of an affidavit on damages prior to the court's entering a judgment in the amount of $748,244.31, *Smith v. Manns*, 200 Ga.App. 701, 409 S.E.2d 270 (1991); *Jim Walter Homes, Inc. v. Roberts*, 196 Ga.App. 618, 396 S.E.2d 787 (1990); and *House v. Hewett Studios, Inc.*, 125 Ga.App. 127, 186 S.E.2d 584 (1971). None of these cases supports plaintiff's argument.

In *House v. Hewett Studios, Inc.*, the trial court awarded a default judgment against a defendant who failed to appear at a deposition. Unlike the facts in the case at bar, the court held a hearing on the motion for the default judgment and found that the defendant's failure to appear at the deposition was willful. The judgment

awarded plaintiff the amount demanded in the complaint, and the court found that the action was *ex contractu* and that the damages were liquidated. In the case at bar, there was no amount demanded in the complaint, and the complaint stated that all amounts would be proven at trial. The damages were unliquidated and the claims in Count IV were *ex delicto*, not *ex contractu*.

In *Smith v. Manns*, the trial court had granted plaintiff's motion to strike the defendant's answer for failure to comply with discovery. The order granted a default as to liability, reserved the issue of damages for trial, and prohibited the defendant from opposing certain claims or introducing certain evidence. Unlike the case at bar, the court held a bench trial to determine damages and then awarded compensatory and punitive damages. While the pro se plaintiff there appealed the findings on damages, he did not include a transcript of the hearing and so the court declined to consider the enumerations of error based on the evidence or proceedings at trial. This case does not lend any support to plaintiff's argument.

Finally, in *Jim Walter Homes, Inc. v. Roberts*, the defendant had failed to answer the complaint and a default judgment was entered on all issues except damages. The court then held a trial on the issue of damages, but failed to give the defendant notice of the trial. The Georgia Court of Appeals affirmed the judgment, holding that under O.C.G.A. § 9–11–5(a), the defendant was deemed to have waived notice of the trial on damages because he failed to file any pleadings in the case. In the case at bar, defendants Whelan and Schaner filed an answer and they did not waive notice of a trial on damages.

■ The case of *Green v. Snellings*, 260 Ga. 751, 400 S.E.2d 2 (1991), is very similar to the case at bar. There, the defendant's answer in a dogbite case was stricken for failure to file responses to interrogatories. The Court held a bench trial on the issue of damages and entered a $50,000.00 final judgment. The defendant contended that he was entitled to notice of and to a jury on the trial of damages. The plaintiff argued that the defendant waived his right to a notice of trial, citing O.C.G.A. § 9–11–5(a). The Supreme Court confined the application of O.C.G.A. § 9–11–5(a), which deems the failure to file pleadings to be a waiver of all notices, to parties who fail to file *any* pleadings, and not to a party whose answer is stricken as a result of a discovery sanction. The Court interpreted O.C.G.A. § 9–11–55(a) as allowing the defendant, upon notice of a hearing on damages, to demand a jury trial on that issue. Thus, even though the defendant was in default by reason of his failure to comply with discovery, he was entitled to notice of the trial on damages and, upon demand, a jury trial on that issue. Similarly, the defendants here were entitled to a trial on damages, to notice of a trial on damages, and to ask for a jury trial on damages. Since defendants were accorded none of these rights, this Court cannot conclude that they had a full and fair opportunity to litigate the issues so as to apply the equitable doctrine of collateral estoppel.

To the extent plaintiff contends that the complaint in the DeKalb County Litigation involved liquidated damages for unpaid invoices or a breach of contract by some of the corporate defendants, then such a claim would not give rise to a nondischargeable judgment based on fraud. In other words, plaintiff cannot have it both ways. If plaintiff contends the default judgment is based on fraud so as to be nondischargeable under § 523(a)(2), then defendants were entitled to notice of a trial on damages and the other protections accorded defendants in O.C.G.A. § 9–11–55(a) in order for this Court to conclude that defendants had a full and fair opportunity to litigate the issues. If a trial on damages was unnecessary because the default judgment is based on liquidated damages and a breach of contract, then it follows that the summary judgment motion

must be denied, as the judgment would not be excepted from discharge under § 523 of the Bankruptcy Code.

Plaintiff also relies on *League v. Graham (In re Graham)*, 191 B.R. 489 (Bankr. N.D.Ga.1996). There, the bankruptcy was filed while an action was pending in state court against the debtor for fraud. When the bankruptcy was filed, the plaintiff filed an adversary proceeding to determine the dischargeability of the contingent debt owed to it by the defendant. Since the state court action was pending, the bankruptcy court lifted the automatic stay so as to allow the state court suit to proceed to judgment. Once back in the state court, the debtor litigated for a while, but then fired the lawyer representing him and refused to offer any further opposition to the plaintiff's case. The state court entered a default judgment against the debtor in excess of $1.5 million. The parties returned to the bankruptcy court and, once again, the defendant refused to participate. He failed to appear at a deposition in the bankruptcy case, and he did not file any response to the motion for summary judgment. The court granted the plaintiff's unopposed motion for summary judgment, concluding that the judgment entered by the state court collaterally estopped further litigation of the dischargeability question under § 523(a)(2)(A).

*League v. Graham* is not dispositive here. First, the defendants in the case at bar have strenuously opposed the motion for summary judgment, whereas the debtor in *League v. Graham* did not oppose the court giving collateral estoppel effect to the state court default judgment. Second, the court in *League v. Graham* found that the defendant there had "every possible chance to litigate the state action completely" and that nothing prevented him from doing so other than his own "willfulness and obstructionism." Here, the Court has found that defendants Whelan and Schaner did not have a full and fair opportunity to litigate the issues, and unlike *League*, defendants here have not

shown any lack of cooperation in the dischargeability proceeding.

*League v. Graham* assumed that Georgia courts would apply collateral estoppel in simple default situations, relying on two cases, *Butler v. Home Furnishing Co.*, 163 Ga.App. 825, 296 S.E.2d 121 (1982) and *Fierer v. Ashe*, 147 Ga.App. 446, 249 S.E.2d 270 (1978). This assumption is questionable, as a close reading of *Butler* and *Fierer* suggests that the doctrine at issue in those cases was the doctrine of res judicata, not collateral estoppel. There are significant differences between these two doctrines. Res judicata involves claim preclusion, and collateral estoppel involves issue preclusion. *Fierer* clearly involved res judicata, and an analysis of the facts in *Butler* shows that it only could have involved res judicata, not collateral estoppel. Judge Massey thoroughly analyzed *Butler* in the case of *Brown v. Feltman (In re Feltman)*, No. 96–67811 (Bankr.N.D.Ga., filed January 2, 1997), *aff'd*, No. 1:97–CV–305 (N.D.Ga., filed April 3, 1997), as follows:

> In *Butler*, the appellant had purchased furniture from the appellee, Home Furnishing Company. In a prior case, Home sued Butler to obtain a writ of possession to recover the furniture. Butler did not appear in that action and defaulted. When Home repossessed the furniture, Butler sued on theories of wrongful repossession, trespass and conversion, contending that Home had no security interest in the furniture. The court of appeals affirmed the judgment dismissing the complaint, stating that "[a] default judgment is considered to be 'on the merits' (citation omitted)." *Butler*, 163 Ga.App. at 826, 296 S.E.2d 121....
>
> The issue raised by the appellant in *Butler* was "that the judgment relied upon by appellee is void because it granted a writ of possession on property in which appellant had not granted to appellee a security interest." *Butler*, 163 Ga.App. at 826, 296 S.E.2d 121. Because the judgment was, according to

the appellant, void, neither the doctrine of estoppel by judgment nor res judicata applied. Butler lost but not because the judgment in the prior case was entitled to collateral estoppel treatment. She lost because the judgment was not void. Her argument, her only argument, was that the judgment was void because it had been based on an incorrect factual finding. The court of appeals held that even if the prior judgment was based on a mistaken factual finding, it could not be collaterally attacked and hence was valid. Butler's remedy was to have appealed the order granting the writ of possession. Butler did not contend that even if the judgment was valid, collateral estoppel or res judicata still did not apply.

Had Butler made such an argument, it would be plain that the applicable doctrine would have been res judicata, not collateral estoppel. The prior case adjudicated the issue of the existence of a valid security interest, perhaps incorrectly. It further adjudicated who had the right to the possession of the property. Claims such as conversion and trespass were issues that could have been raised in the prior litigation. They are the other side of the coin of repossession, not foreign claims for relief. Thus, they fall under the heading of "all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." O.C.G.A. § 9–12–40.

This is the stuff of res judicata, not collateral estoppel.

*Id.* at 9–10.

 Thus, while simple default judgments in Georgia have res judicata effect to preclude relitigation of the same claim, *League* is not persuasive authority for holding that simple default judgments in Georgia have collateral estoppel effect to preclude later relitigation of factual allegations contained in an unanswered complaint. The rationale against giving collateral estoppel effect to simple default judgments is discussed *infra*, p. 507 note 4. Finally, res judicata is not applicable in this dischargeability case, because it could not have been raised or litigated in the DeKalb County Litigation. It is distinct and separate from any state law claim for breach of contract or fraud. *See Moore v. Gill (In re Gill)*, 181 B.R. 666, 670 (Bankr.N.D.Ga.1995).

It is also useful to examine the cases applying federal collateral estoppel to dischargeability proceedings.[3] Federal collateral estoppel requires the following three elements: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the prior action. *Halpern v. First Ga. Bank (In re Halpern)*, 810 F.2d 1061, 1064 (11th Cir.1987); *Held*, 734 F.2d at 629.

At first blush, it seems that the Eleventh Circuit case of *Bush v. Balfour Beatty Bahamas*, 62 F.3d at 1319, might re-

---

**3.** Courts apply federal collateral estoppel when the prior judgment is by a federal court. Most courts apply the state law of collateral estoppel to determine the preclusive effect of a state court judgment, although there is some debate about whether federal collateral estoppel is more appropriate when determining the preclusive effect of a state court judgment to a dischargeability proceeding, since the dischargeability proceeding is a federal matter. *See Angus v. Wald (In re Wald)*, 208 B.R. 516 (Bankr.N.D.Ala.1997) (where court applied federal rather than state

law of collateral estoppel to determine if state court default judgment should be given preclusive effect in a dischargeability case); *see also* Bernice B. Donald & Kenneth J. Cooper, *Collateral Estoppel in Section 523(c) Dischargeability Proceedings: When is a Default Judgment Actually Litigated?*, 12 Bankr.Dev.J. 321 (1996) (where authors conclude that analysis of state court default judgments under a federal test of collateral estoppel is not consistent with the requirement that courts give full faith and credit to judgments issued in another jurisdiction).

quire that plaintiff's motion for summary judgment be granted. In *Bush,* the Court gave collateral estoppel effect to a prior federal court penalty default judgment. There, the plaintiff, Balfour, had filed a multi-count complaint in the district court against two defendants, one of whom was Mr. Bush. Only one count of the complaint stated a claim against Mr. Bush and this was a claim for fraud. He filed an answer and counterclaim. The parties began discovery, but Mr. Bush's attorney had difficulty contacting him and the district court allowed Mr. Bush's lawyer to withdraw from the case. Mr. Bush proceeded pro se, but he failed to produce trial exhibits, despite repeated requests, and he failed to appear for a properly noticed deposition after numerous reminders. The plaintiff, Balfour, filed a motion for sanctions pursuant to Fed.R.Civ.P. 37(d), and Mr. Bush filed a response, claiming he had been out of state. The district court conducted a pretrial conference at which time the court heard oral argument on Balfour's motion for Rule 37 sanctions, but again Mr. Bush failed to appear. The district court then entered an order granting a judgment by default on the grounds stated in the complaint. Ten months later, Mr. Bush filed a bankruptcy case and Balfour filed an adversary proceeding to determine dischargeability of its judgment debt against Mr. Bush. Balfour filed a motion for summary judgment, contending that the default judgment in the district court action conclusively established the elements necessary for the bankruptcy court to hold the debt nondischargeable under § 523(a)(2)(A) as a debt for money obtained by fraud. The bankruptcy court

gave preclusive effect to the default judgment, and the district court affirmed.

. The Eleventh Circuit focused on whether the default judgment there met the federal collateral estoppel requirement that the issue in the bankruptcy action was "actually litigated" in the prior action. The Court recognized the general federal rule that ordinarily, a default judgment will not support the application of collateral estoppel, because none of the issues is actually litigated.[4] Then the Court distinguished the simple default judgment resulting from a failure to file an answer from a penalty default judgment, holding:

> Where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort to bring the action to judgment, it is not an abuse of discretion for a district court to apply the doctrine of collateral estoppel to prevent further litigation of the issues resolved by the default judgment in the prior action.

*Id.* at 1325.[5]

Courts in other circuits have also given collateral estoppel effect in bankruptcy dischargeability proceedings to prior penalty default judgments, that is, default judgments entered as a sanction. In *FDIC v. Daily (In re Daily),* 47 F.3d 365 (9th Cir.1995), the court gave collateral estoppel effect to a default judgment entered in a RICO action where the default resulted from the debtor's deliberate, dilatory and obstreperous conduct. The court in *Bush* relied on *Daily,* and the Third Circuit in *Wolstein v. Docteroff (In re Docteroff),* 133 F.3d 210 (3rd Cir.1997), cited

---

**4.** The rationale for the general rule denying collateral estoppel effect to default judgments is that a party may choose not to litigate issues for reasons that have nothing to do with the merits of the case, i.e., if the amount at stake does not justify the expense of contesting the lawsuit. This decision should not bind the party in a later action involving a different claim. *See McCart v. Jordana (In re Jordana),* 221 B.R. 950, 954 (Bankr.W.D.Okla.

1998); *Navab v. Barzegar (In re Barzegar),* 189 B.R. 864, 869 (Bankr.N.D.Ga.1995).

**5.** Ironically, it appears that Mr. Bush may have succeeded after all in avoiding Balfour's collection efforts. In the recent Eleventh Circuit case of *Balfour Beatty Bahamas, Ltd. v. Bush,* 170 F.3d 1048 (11th Cir.1999), the Court held that Balfour's post-judgment collection efforts were untimely.

*Bush* and *Daily* with approval, holding that the "actual litigation requirement" for purposes of collateral estoppel was met where a party deliberately prevents resolution of a lawsuit. *See also Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17 (4th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 298, 139 L.Ed.2d 230 (1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir.1996) (where the courts held that when a party has appeared and litigated a matter, state court default judgments subsequently entered for discovery violations can act as collateral estoppel in a bankruptcy dischargeability case).

The facts in the case at bar are different from the facts in *Bush* and the other circuit court cases. The facts here do not suggest obstreperous or obstructive behavior on the part of defendants Whelan and Schaner. They filed an answer to the complaint through counsel. They participated in the first round of discovery and appeared at depositions. When served with an amended complaint and a second round of discovery, defendants' counsel asked for more time to respond, because his wife was ill and he was having difficulty getting the information together. Defendants' lawyer failed to respond in writing to the motion to strike, but he explained that this was because he expected the matter to be set for a hearing. This expectation was not unreasonable in light of plaintiff's written request for a hearing and the case law in Georgia that suggests the need for a hearing on a motion to strike the answer as a discovery sanction. *Stolle,* 206 Ga.App. at 235, 424 S.E.2d at 807; *Cook,* 159 Ga.App. at 24, 282 S.E.2d at 680. When defendants were served with a copy of the December 11, 1997 entry of default, their lawyer immediately filed a notice of appeal. Significantly, it appears that defendants were never served with the plaintiff's affidavit on damages and were never given an opportunity to contest the damages. These facts are in sharp contrast to the facts in *Bush.* Given the lack of any

hearing in the state court on the default motion and the lack of any hearing on damages, the particular default judgment entered here does not meet the "actual litigation" requirement under either the federal or the state collateral estoppel doctrine.

Unlike the facts in *Bush, Daily,* and the other cases cited above, the facts leading to the default judgment in the DeKalb County Litigation do not reflect a deliberate abuse of the judicial process by defendants Whelan and Schaner. Giving defendants here an opportunity to defend the dischargeability claim in bankruptcy court is not rewarding the debtors for any misconduct. While defendants' attorney may have made some mistakes when he failed to respond in writing to the motion to compel in state court and when he failed to ask the state court to reconsider the order entering the default or the order awarding damages without a trial, these mistakes do not amount to the type of misconduct that should deprive defendants of the right to defend the dischargeability action in bankruptcy court.

■■■■ Collateral estoppel is a discretionary doctrine. *United States v. Blue Cross Blue Shield of Ga.,* 755 F.Supp. 1040, 1046 (S.D.Ga.1990). The law does not require blind application of a rule that all defaults entered as discovery sanctions meet the "actual litigation" requirement for purposes of applying collateral estoppel. While the availability of collateral estoppel in a particular case is a question of law, the decision to apply the doctrine is vested in the trial court's discretion. *Bush,* 62 F.3d at 1325 n. 8; *Robi v. Five Platters, Inc.,* 838 F.2d 318, 321 (9th Cir. 1988). The Court is mindful that bankruptcy courts cannot modify or vacate a state court judgment. By declining to apply the doctrine of collateral estoppel, the court is not attempting to modify or vacate the state court judgment. The judgment

stands, unless the defendants seek and obtain relief in the state courts. However, based on the current record, the question of whether this judgment is non dischargeable is an issue that will have to be tried in the Bankruptcy Court.

In accordance with the above reasoning, plaintiff's motions for summary judgment are DENIED.