## 55940. FIERER et al. v. ASHE et al.

SMITH, Judge.

We granted interlocutory appeal to review the trial court's denial of appellants' motion for summary judgment, a motion founded on res judicata and collateral estoppel. Finding these principles properly applicable here, we reverse the judgment.

### I. Facts

Stephen Lawson, together with Cambridge Capital Corporation (hereinafter jointly referred to as Lawson), organized eight land investment syndications in the form of limited partnerships; these syndications thus were subject to both Georgia and federal securities laws. Lawson, as the general partner of these eight entities, sold limited partnership interests to almost 200 investors. Two of the buyers were Ashe and Fitzsimmons, the appellees here.

The appellants had been employed by Lawson to handle the legal work involved in these partnership sales. The appellants failed to obtain registration of these securities as required under the then-applicable "blue sky" law, the Georgia Securities Act of 1957. Ga. L. 1957, p. 134 et seq. as amended. In addition, Lawson has admitted various violations of Georgia and federal securities laws—including misrepresentations, concealments, secret agreements, and fund misallocations—and Lawson has admitted concealing his violations from the appellants. After learning of the violations, the appellants notified Lawson and all limited partners that they were resigning as counsel.

Lawson's investment scheme then began to crumble. In separate actions, Ashe and Fitzsimmons sued Lawson in the State Court of Fulton County to rescind their respective purchases of limited partnership interests. Numerous other investors filed similar actions, all but one in the Superior Court of Fulton County and the other in the Federal District Court for the Northern District of Georgia. In each of these actions, defendant Lawson filed a third-party legal malpractice claim against the appellants, seeking indemnification from them for their alleged negligence in not obtaining registrations as required in the Act of 1957, supra. In addition to the

third-party claims, Lawson filed, in the superior court, a direct action against the appellants, described by them as an "all encompassing malpractice action."

The actions brought by Ashe and Fitzsimmons were consolidated for hearing motions, one of which was the appellants' motion for summary judgment. This motion, which was directed to the merits of the third-party claim, was denied, and this court refused to review it when the appellants filed an appeal without following proper interlocutory procedures. *Fierer v. Ashe,* 142 Ga. App. 290 (235 SE2d 598) (1977). Following the state court's denial of the summary judgment motion, a similar motion pending in the district court was granted, and that judgment has not been appealed, attacked, or set aside. It remains intact as a final judgment.

On the basis of the federal judgment, the superior court granted summary judgment in both the third-party and the direct malpractice actions there pending between Lawson and the appellants. The superior court held that these suits were barred by reason of the res judicata and collateral estoppel effects of the district court judgment. The superior court judgment, too, has not been appealed, challenged, or set aside.

Certified copies of the final judgment of the district court and of the numerous final judgments of the superior court were entered in the record of the state court case, and the appellants again moved for summary judgment, this time on the grounds of res judicata and collateral estoppel. The trial court denied the motion and, pursuant to a proper application by the appellants, we granted this appeal. Ashe and Fitzsimmons appear as appellees here, rather than Lawson, as they are assignees of Lawson's claimed right of indemnification.

## II. Analysis

Code § 110-501 defines the conclusiveness of judgments: "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered, until such judgment shall be reversed or set aside." In reaching our decision that the above statute operates to bar the state

court claim, we will consider separately (a) whether there is a valid antecedent judgment; (b) whether there is identity of parties; (c) whether there is identity of issues; and (d) whether reasons of public policy militate against a strict application of the above statute in this case.

## A. Valid Antecedent Judgment

The appellees raise the following argument: The district court summary judgment motion was unopposed, and thus was granted without any serious consideration of the merits. The district court judgment, in turn, became the foundation for the several superior court judgments, which judgments also were rendered without any serious consideration of the merits. The appellees summarize, "In effect, the order granting summary judgment in [the district court] was taken by default, and the judgment entered thereupon should be considered in that context."

Considered in that context, the prior judgments have res judicata applicability. Even had the earlier judgments been outright default judgments, they still could be asserted as res judicata, for the "judgment of a court having jurisdiction of the parties and of the subject matter operates as *res judicata,* in the absence of fraud or collusion, even if obtained upon a default." Morris v. Jones, 329 U.S. 545, 550-551 (67 SC 451, 91 LE 488) (1947). Similarly, the applicability of the prior judgments is not diminished by their summary character: "[A] summary judgment terminating a suit upon motion therefor under Rule 56 is a final adjudication on the merits. The application of the doctrine of res judicata in this manner does not deprive a litigant of his right to 'a day in court.' That right 'means not the actual presentation of the case, but the right to be duly cited to appear and to be afforded an opportunity to be heard.'" 1B Moore's Federal Practice 1001, 1007, ¶ 0.409[1].

## B. Identity of Parties

Each of the third-party actions against the appellants originated with suits from different plaintiffs, i.e., the different investors who bought limited partnership interests from Lawson. But in each, Lawson was the third-party plaintiff and the appellants were third-party defendants. Third-party actions are viewed as separate and independent lawsuits. E.g., *Register v.*

*Stone's Independent Oil Distributors,* 227 Ga. 123, 126 (179 SE2d 68) (1971). Final judgments between the parties in one third-party action have been held to bar a subsequent third-party action between the same parties. *Panto v. Plymouth Bus Co.,* 260 FSupp. 670 (E.D.Pa. 1966). "Obviously a judgment adjudicating a claim between a third-party plaintiff and a third-party defendant is conclusive to the same extent as though rendered in independent litigation between them." 1B Moore's Federal Practice 1281, 1283, ¶ 0.411[2]. And, in addition to the independently sufficient prior third-party actions between Lawson and the appellants, there is also the direct suit between them which itself clearly establishes that the parties involved here are identical to the parties involved in the prior actions.

### C. Identity of Issues

The voluminous record in this case contains the pleadings and judgments in the district court and superior court actions. Code § 110-501, supra, establishes the prior judgments as conclusive to all matters which were put in issue or which might have been put in issue. It is true that many of the individual lawsuits involved partnerships which were not involved in the state court actions brought by Ashe and Fitzsimmons, and that, therefore, the third-party malpractice claims in those cases were technically distinguishable from the claim in this case. However, a reading of the approximately two dozen third-party malpractice claims, and of the direct, "all encompassing" malpractice claim, commands the conclusion that the state court action contains no distinct issue which was not raised, or could not have been raised, in the prior actions.

### D. Policy Considerations

The appellees assert that the conclusiveness of the prior judgments should be minimized in deference to the policy that the regulatory effect of securities laws should not be shortchanged by technical procedural rules, such as res judicata, which prevent the courts from applying the intended remedy. We are aware of arguments that the principles of res judicata and collateral estoppel "are not inexorable rules of law" and that "they have been occasionally rejected or qualified in cases in which an

inflexible application would have violated an overriding public policy or resulted in manifest injustice to a party." 1B Moore's Federal Practice 783, ¶ 0.405[11]. But the appellees, though citing cases they argue are analogous, have cited no securities cases in which the traditional rules of res judicata or collateral estoppel have been suspended. More to the point, they have cited no legal malpractice cases in which the rules were loosened. We will not here establish as a matter of law that the traditional doctrines of res judicata or collateral estoppel have only limited application in either securities law or legal malpractice cases. Whether those rules should be bent where their application results in "manifest injustice" we need not decide, for the appellees have presented no more than vague argument on this point. If the appellees wish to invoke such an admittedly narrow exception to a well established principle of law, which principle has been shown to be applicable, the appellees must meet their burden of producing evidence to sustain the applicability of the narrow, obscure exception. This they did not do. *Gerald v. Ameron Automotive Centers,* 145 Ga. App. 200 (2) (243 SE2d 565) (1978); *Meade v. Heimanson,* 239 Ga. 177 (236 SE2d 357) (1977).

Finally, the appellees contend that the denial of appellants' motion for summary judgment was proper because of the combined effect of (1) the "default" character of the prior judgments, (2) the "public policy" in favor of a full determination of the issues in this case, and (3) the previous denial of appellants' first motion for summary judgment, which motion was based on the merits of the claim. The addition of this third element' does not change our analysis. Under CPA § 56 (b) (Code Ann. § 81A-156(b)) a defending party may move for summary judgment "at any time." That the prior denial of summary judgment did not foreclose the subsequent grant of summary judgment is manifest in the statutory dictate that an "order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." CPA § 54 (b) (Code Ann. § 81A-154 (b)). "Under Code Ann. § 81A-156 a party against whom a claim is asserted may move at any time for summary

judgment and it shall be granted if under the expanded record, including the pleadings, the moving party is entitled to judgment as a matter of law." *Ellington v. Tolar Const. Co.,* 142 Ga. App. 218, 221 (235 SE2d 729) (1977).

### III. Conclusion

Under the record here, as expanded by introduction of the pleadings and judgments from the district court and superior court cases, the appellants' motion for summary judgment should have been granted.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

ARGUED JUNE 5, 1978 — DECIDED SEPTEMBER 7, 1978 — REHEARING DENIED OCTOBER 5, 1978 —

*King & Spalding, Michael C. Russ, H. Lamar Mixson,* for appellants.

*Greene, Buckley, DeRieux & Jones, Thomas B. Branch, III, Eileen M. Crowley,* for appellees.