## S05Q1465. BROWN & WILLIAMSON TOBACCO CORPORATION v. GAULT et al.

### (627 SE2d 549)

HUNSTEIN, Presiding Justice.

In 1997 the State of Georgia brought suit in the Superior Court of Fulton County against a number of cigarette manufacturers, including Brown & Williamson ("B&W"), asserting product liability claims and seeking compensatory and punitive damages "to restore to the State's treasury those funds spent [by the State] for tobacco attributable health care costs." The parties settled the case one year later when the tobacco companies paid the State of Georgia $4.8 billion. The Master Settlement Agreement, which was approved by the superior court, provided, inter alia, that "no part of any payment under this Agreement is made in settlement of any actual or potential liability for . . . enhanced damages." It also provided that the State agreed to "absolutely and unconditionally release and forever discharge all released parties from all released claims that the releasing parties directly, indirectly, derivatively or in any other capacity ever had, now have, or hereafter can, shall or may have."

The agreement defined "releasing parties" in pertinent part as "persons or entities acting in a parens patriae, sovereign, quasi-sovereign, private attorney general, qui tam, taxpayer, or any other capacity . . . to the extent that any such person or entity is seeking relief on behalf of or generally applicable to the general public . . . as opposed to solely private or individual relief for separate and distinct injuries." It also defined both "released claims" and "claims." "Released claims" were defined, in part, as being "directly or indirectly based on, arising out of or in any way related, in whole or in part, to (A) the use, sale, distribution, manufacture, development, advertising, marketing or health effects of" tobacco. The definition of "claims" included "liabilities of any nature including civil penalties and punitive damages."

Clara Gault Freeman died of lung cancer in 2001. Plaintiffs Willie Gault, the administrator of the deceased's estate, and Danny Freeman, the deceased's widower, brought this product liability action against B&W in Fulton County seeking compensatory and punitive damages. B&W removed the case to the United States District Court for the Northern District of Georgia and moved for summary judgment, asserting that plaintiffs' punitive damages claim is barred by the doctrine of res judicata. Thereafter, the district court certified this question:

Does the doctrine of res judicata bar individual Georgians from seeking punitive damages against [B&W] when the Attorney General of Georgia, suing on behalf of the State of

Georgia, released [B&W] from all future punitive damages claims related to the manufacture or use of tobacco products by signing the Master Settlement Agreement?

See 1983 Ga. Const., Art. VI, Sec. VI, Par. IV (conferring in this Court jurisdiction to answer question of law from "any state appellate or federal or district or appellate court"). For the reasons that follow, we answer the question in the affirmative.

The doctrine of res judicata prevents the re-litigation of all claims that have already been adjudicated, or that could have been adjudicated, between identical parties or their privies in identical causes of action. OCGA § 9-12-40. In order for the doctrine to apply, three prerequisites must be satisfied: (1) identity of the parties or their privies; (2) identity of the cause of action; and (3) previous adjudication on the merits by a court of competent jurisdiction. *Gunby v. Simon*, 277 Ga. 698, 699 (594 SE2d 342) (2004); *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864 (1) (463 SE2d 5) (1995). See Davis and Shulman's Ga. Practice & Procedure (2001 ed.), §§ 27-3, 27-4. We find these prerequisites are satisfied under the facts of this case.

1. Res judicata applies only to the parties to the prior suit and those in privity with them. OCGA § 9-12-40. It is undisputed that plaintiffs were not parties in the action between the State and B&W. Thus, we must consider whether they were in privity with the State.

A privy is generally defined as "one who is represented at trial and who is in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right. [Cits.]" *Butler v. Turner*, 274 Ga. 566, 568 (1) (555 SE2d 427) (2001). In this case, privity is alleged to exist through application of the doctrine of parens patriae. The doctrine of parens patriae grants standing to a state to sue on behalf of its citizens. See *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U. S. 592, 600 (102 SC 3260, 73 LE2d 995) (1982). The State can, as parens patriae, maintain an action on behalf of its citizens to seek compensation for sovereign or quasi-sovereign claims, but it may not represent its citizens' private interests. Id. at 607. This means that the State and its citizens can be privies only with regard to public claims; they cannot be privies with regard to private claims.

These principles were elucidated in *Satsky v. Paramount Communications*, 7 F3d 1464 (II) (B) (10th Cir. 1993), in which the court determined that plaintiffs and the State of Colorado were privies for "common public rights," but were not in privity when it came to "purely private interests." Id. at 1470. In making that determination, the court explained:

"There is no definition of 'privity' which can be automatically applied to all cases involving the doctrines of res judicata and collateral estoppel," [cit.], since "privity depends upon the circumstances." [Cit.] "Privity may . . . be established if the party to the first suit represented the interests of the party to the second suit." [Cits.]

The [U. S.] Supreme Court has recognized the "right of a State to sue as parens patriae to prevent or repair harm to its 'quasi-sovereign' interests." [Cit.] "In order to maintain [a parens patriae] action, the State must articulate an interest apart from the interests of particular private parties, i.e., the State must be more than a nominal party. The State must express a quasi-sovereign interest." [Cit.] . . . Although the [U. S.] Supreme Court has not expressly defined what is a "quasi-sovereign" interest, it is clear that a state may sue to protect its citizens against "the pollution of the air over its territory; or of interstate waters in which the state has rights." [Cit.] It is equally clear, however, that a state may not sue to assert the rights of private individuals. [Cits.]

Id. at 1468-1469. In those instances where a state has standing to maintain an action as parens patriae, the resulting judgments have been held to be binding on the citizens of the state as privies for purposes of res judicata. See, e.g., *City of Tacoma v. Taxpayers of Tacoma*, 357 U. S. 320, 340-341 (78 SC 1209, 2 LE2d 1345) (1958); *Satsky*, supra, 7 F3d at 1470; *Vacco v. Reebok Intl.*, 96 F3d 44, 48 (2d Cir. 1996); *Alaska Sport Fishing Assn. v. Exxon Corp.*, 34 F3d 769 (III) (A) (9th Cir. 1994) (per curiam).

In acknowledgment of the above principles, B&W does not dispute plaintiffs' right to seek compensatory damages in this product liability case. Inasmuch as plaintiffs' claim for compensatory damages is of a private, individual nature, it cannot be said that plaintiffs and the State are in privity with respect to such claims. However, B&W does dispute plaintiffs' right to seek punitive damages in this action. In this regard, B&W posits that a punitive damage award in a product liability case is a matter of public interest; that in the prior proceeding the State sought punitive damages on behalf of all of its citizens; that plaintiffs and the State are in privity with regard to public claims; and that, therefore, plaintiffs' punitive damages claim is barred.

OCGA § 51-12-5.1 (c) expressly states that punitive damages are not to be awarded as compensation "but solely to punish, penalize, or deter a defendant." In recognition of this purpose, Georgia law limits the recovery of punitive damages in product liability cases to one

award of punitive damages from a defendant in a court in this State "for any act or omission . . . regardless of the number of causes of action which may arise from such act or omission." Id. at (e) (1). Even then, 75 percent of the punitive damages awarded in a product liability action, less a proportion of the costs of litigation, are to be paid into the State treasury. Id. at (e) (2). Thus, unlike compensatory damages, punitive damages serve the public interest by punishing, penalizing, and deterring the wrongdoer. See id. at (c). See generally *Mack Trucks v. Conkle*, 263 Ga. 539 (2) (a) (436 SE2d 635) (1993).

Because punitive damages serve a public interest and are intended to protect the general public, as opposed to benefitting or rewarding particular private parties, we find the State, in seeking punitive damages in the suit against B&W, did so as parens patriae and in this capacity represented the interests of all Georgia citizens, including plaintiffs here. Accordingly, we conclude that the State and plaintiffs were privies in that action. See *Waldroup*, supra, 265 Ga. at 866 (1) (husband and wife in privity where wife previously sued in both individual and representative capacities); *Roberts v. Hill*, 81 Ga. App. 185 (3) (58 SE2d 465) (1950) (privies are all parties represented by the parties and claim under them, the term privity denoting mutual or successive relationship to the same rights of property).

2. We similarly find identity of the causes of action. In the prior action, the State sought compensatory damages to reimburse the treasury for funds spent by the State for tobacco attributable health care costs. In the subsequent proceeding, plaintiffs sought compensatory damages for Ms. Freeman's tobacco-related personal injuries. Insofar as the punitive damage claims are concerned, the matters put in issue in the State's action and in plaintiffs' proceeding are the same. In each case, punitive damages were sought in connection with tobacco industry product liability claims.

3. Regarding the third prerequisite, adjudication of the merits,[1] it is generally accepted that

> a consent judgment differs from a judgment rendered on the merits in that it results from an affirmative act of the parties rather than the considered judgment of the court following litigation of the issues. A consent judgment is one entered into by stipulation of the parties with the intention of resolving a dispute, and generally is brought to the court by the parties so that it may be entered by the court, thereby compromising and settling an action.

---

[1] We note that the jurisdiction of the Fulton County Superior Court in the prior action has not been challenged in this appeal.

(Footnote omitted.) *City of Centerville v. City of Warner Robins*, 270 Ga. 183, 184 (1) (508 SE2d 161) (1998). Although a consent judgment is brought about by agreement of the parties, it is accorded the weight and finality of a judgment. Thus, a consent decree is an enforceable judgment and can be accorded preclusive effect. See *Rufo v. Inmates of Suffolk County Jail*, 502 U. S. 367, 378 (II) (112 SC 748, 116 LE2d 867) (1992) (consent judgment is agreement that parties desire and expect will be enforceable as judicial decree subject to rules applicable to other judgments and decrees). However, it is also a contract and, therefore, it must be interpreted like any other contract. See *City of Centerville*, supra at 186; Wright, Miller & Cooper, 18A Federal Practice and Procedure: Jurisdiction 2d § 4443, p. 262 (contractual "nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties" (footnote omitted)).

Here, the State sought punitive damages in its action against B&W and the plain language of the agreement demonstrates that the parties in that action intended to compromise and settle the State's claim for punitive damages. To that end, the agreement specifically defined settled claims as "liabilities of any nature including civil penalties and punitive damages" and expressly included any claims the State asserted or may have asserted in its capacity as parens patriae. The mere fact that no specific amount of settlement monies was designated as payment toward "enhanced damages" does not negate the State's clear intent to resolve its claim for punitive damages. See generally Clark and Clark, Ga. Settlements Law & Strategies (2d ed.), § 2-17. Accordingly, we find the consent judgment in the prior action is a binding judgment which unambiguously released and resolved any and all punitive damages claims the State may have asserted against B&W.

Having determined that each of the prerequisites for applying the doctrine of res judicata has been satisfied, we answer the question from the district court in the affirmative.[2] The State's release of its punitive damages claim as parens patriae precludes plaintiffs from pursuing the same claim for punitive damages in this action.

---

[2] Although the dissent would reject application of the well-settled statutory and common law rule of res judicata based on "overriding public policy grounds," these issues are not currently before the Court. Appellees have neither pled nor argued that such an exception is applicable. "If the appellees wish to invoke such an admittedly narrow exception to a well established principle of law, which principle has been shown to be applicable, the appellees must meet their burden of producing evidence to sustain the applicability of the narrow, obscure exception. This they did not do. [Cits.]" *Fierer v. Ashe*, 147 Ga. App. 446, 450 (249 SE2d 270) (1978). We find it unnecessary, therefore, to determine whether a settled punitive damages claim can preclude a subsequent claim for punitive damages under OCGA § 51-12-5.1 (d).

*Question answered. Sears, C. J., Benham, Carley, and Hines, JJ., and Judge Gail Tusan concur. Thompson, J., dissents. Melton, J., disqualified.*

THOMPSON, Justice, dissenting.

I believe the application of the doctrine of res judicata in this case violates our State's public policy.[3] Accordingly, I dissent.

The doctrine of res judicata is aimed at fostering the finality of litigation, but it must always be balanced against the right of litigants to be heard in court. See *Anderson Oil Co. v. Benton Oil Co.*, 246 Ga. 304, 306 (271 SE2d 207) (1980). In balancing these interests, and determining whether the doctrine is to be applied, our courts consider (a) the identity of the parties and their privies; (b) the sameness of the matters in issue; (c) the binding effect of the prior judgment; and (d) public policy concerns. *Fierer v. Ashe*, 147 Ga. App. 446, 448 (249 SE2d 270) (1978). I agree with the majority that the first three elements of the doctrine have been met in this case. However, I do not believe that the doctrine should be applied so as to preclude plaintiffs from seeking punitive damages.

The doctrine of res judicata is not a rigid rule of law. See generally *Brookins v. Brookins*, 257 Ga. 205, 206 (2) (357 SE2d 77) (1987) ("a mechanical application of the res judicata rule in this situation would frustrate the purposes of the URESA"). In fact, it has " 'been occasionally rejected or qualified in cases in which an inflexible application would have violated an overriding public policy or resulted in manifest injustice to a party.' 1B Moore's Federal Practice 783, para. 0.405 [11]." *Fierer*, supra at 449-450. In my view, our public policy with regard to punitive damages claims militates against the application of the res judicata doctrine in this case.

---

[3] In footnote 2, the majority posits that the public policy question was not raised by the parties and, therefore, cannot be considered by the Court. I disagree. The district court did not ask us to enter a ruling strictly upon the issues presented by the parties. Rather, we have been asked to expound upon Georgia law with regard to the interplay between res judicata and punitive damages. Thus, our response does not need to be limited by the issues and problems posed by either the district court or the parties. See *Doss v. Food Lion*, 83 F3d 378, 380 (11th Cir. 1996).

I should add that *Fierer v. Ashe*, 147 Ga. App. 446 (249 SE2d 270) (1978), does not hold that a Georgia court cannot consider a public policy issue on its own motion. (It simply ruled that appellees did not carry their burden of showing that the doctrine of res judicata should not have been applied in that case.) Indeed, such a holding would have been contrary to our jurisprudence, and the law of other jurisdictions, which permit sua sponte consideration of issues of public concern. See, e.g., *Crew v. Hutcheson*, 115 Ga. 511 (42 SE 16) (1902) (proper for trial court to exclude evidence on ground of public policy ex mero motu); *Goodrum v. State*, 60 Ga. 509 (1878) (trial judge may take corrective action on his own motion when matter of public policy is violated). See also Annot., What Issues Will the Supreme Court Consider, Though Not, or Not Properly, Raised by the Parties, 42 LE2d 946, § 12; Vestal, Sua Sponte Consideration in Appellate Review, 27 Fordham L. Rev. 477 (1959).

OCGA § 51-12-5.1 (e) (1) permits the recovery of only one punitive damages award against a defendant in a product liability case regardless of the number of individuals who may have been harmed by the defendant's act or omission. Standing alone, this subsection would give rise to the argument that settlement of a punitive damages claim in a product liability case bars a subsequent claim for such damages. However, this subsection must be read in conjunction with OCGA § 51-12-5.1 (d) of our punitive damages statute, which provides, in pertinent part:

> (1) An award of punitive damages must be specifically prayed for in a complaint. In any case in which punitive damages are claimed, the *trier of fact* shall first resolve from the evidence produced at *trial* whether an award of punitive damages shall be made. This finding shall be made specially through an appropriate form of *verdict*, along with the other required findings.
>
> (2) If it is found that punitive damages are to be awarded, the *trial* shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case.

(Emphasis supplied.)

This provision makes it clear that our legislature did not intend to bar a punitive damages claim simply because punitive damages were sought and settled in a prior proceeding. On the contrary, this provision demonstrates that a punitive damages award cannot act as a bar to a subsequent claim for such damages unless, in the course of an adversary proceeding, a factfinder determines whether such an award is appropriate and, if so, the amount necessary to deter or punish the defendant.

I believe our legislature grounded this provision on wise policy considerations. See *Logan v. State*, 86 Ga. 266, 266-268 (12 SE 406) (1890) (statute is expression of public policy by the legislature). A judgment awarding punitive damages should not preclude a subsequent punitive damages claim if it has not been tried by a factfinder. No other procedure can ensure that a punitive damages claim is fully and fairly assessed; no other procedure can ensure that a punitive damages award should even be a bar to subsequent punitive damages claims. In short, no other procedure can guarantee that a punitive damages judgment has not been procured by fraud or collusion. See *Fierer v. Ashe*, supra at 448.

This is not to say that the consent judgment entered in the prior litigation was procured by fraud. The facts show only that the State sought compensatory and punitive damages, that the State's claims were settled, and that no portion of the settlement monies were used to pay "enhanced damages." But whether the settlement was or was not procured by fraud or collusion is beside the point. The potential for fraud was there, and that is why it is imperative that we follow the legislative directive set forth in OCGA § 51-12-5.1 (d).

Given this State's policy approach, as expressed in the punitive damages statute, I would hold that, although a punitive damages claim can be compromised and settled, a settled punitive damages claim cannot preclude a subsequent claim for punitive damages. I fear that, by holding otherwise, the majority's approach will encourage product liability defendants to settle bogus punitive damages claims in order to preclude subsequent punitive damages litigation.

DECIDED MARCH 13, 2006 —
RECONSIDERATION DENIED APRIL 13, 2006.

*Balch & Bingham, Dorian N. Daggs, King & Spalding, William R. Bassett, Jr., William E. Hoffmann, Jr., Eric M. Wachter, Richard A. Schneider, Gordon A. Smith*, for appellant.

*Doffermyre, Shields, Canfield, Knowles & Devine, Robert E. Shields, Ralph I. Knowles, Jr., Leslie J. Bryan, Clifford E. Douglas, Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Sidney R. Barrett, Jr., Assistant Attorney General*, for appellees.