■ BDCM OPPORTUNITY FUND II, LP, et al., Respondents, v YUCAIPA AMERICAN ALLIANCE FUND I, LP, et al., Appellants. [978 NYS2d 10]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered July 27, 2012, which denied defendants' motion to dismiss the complaint, unanimously affirmed, without costs. Order, same court and Justice, entered March 29, 2013, which granted plaintiffs' motion for summary judgment, unanimously modified, on the law, to deny the motion of plaintiffs BDCM Opportunity Fund II, LP, and Black Diamond CLO 2005-1 Ltd. (collectively, Black Diamond), and otherwise affirmed, without costs.

The instant action is not barred by a previous Georgia action to which plaintiffs were not parties, since there is no identity of the parties or their privies in the two actions (*see Brown & Williamson Tobacco Corp. v Gault,* 280 Ga 420, 421, 627 SE2d 549, 551 [2006]).[1] Contrary to defendants' contention, plaintiffs and nonparty (to this action) the CIT Group/Business Credit, Inc.— the defendant and counterclaim plaintiff in the Georgia action—were not privies (*see Brown & Williamson,* 280 Ga at 421, 627 SE2d at 551; *see also Dennis v First Natl. Bank of the S.,* 293 Ga App 890, 893, 668 SE2d 479, 483 [2008]). In the Georgia

---

1. Under New York law, the preclusive effect of a Georgia judgment is governed by Georgia law (*see Matter of Luna v Dobson,* 97 NY2d 178, 183 [2001]).

complaint, defendants—the plaintiffs in the Georgia action—alleged that CIT's interests were adverse to those of the other lenders, such as plaintiffs. Nor was CIT acting as plaintiffs' agent, which in general would make them privies (*see College Park Land Co. v Mayor & Council of Coll. Park*, 48 Ga App 528, 173 SE 239, 240 [1934]; *Brown & Williamson*, 280 Ga at 422, 627 SE2d at 552).[2] The settlement agreement between CIT and defendants makes it clear that CIT was acting only on its own behalf, not on plaintiffs' behalf.

Defendants contend that there is a triable issue of fact whether CIT acted as plaintiffs' agent in settling the Georgia action, and defendants need discovery on this issue. However, in light of the clear language of the settlement agreement, there is neither an issue of fact nor a need for discovery.

Defendants argue that the motion court erred in finding that the fourth amendment to the credit agreement required the consent of all lenders because section 10.5 (b) of the credit agreement does not list an amendment to the definition of "Term Loan Exposure" as a change that requires the consent of all lenders. However, section 10.5 (b) states, "Without the written consent of each Lender . . . that would be affected thereby, no amendment . . . shall be effective if the *effect* thereof would: . . . (ix) amend the definition of 'Requisite Lenders' or 'Pro Rata Share.' " We agree with the motion court that the fourth amendment's change to the definition of "Term Loan Exposure" had the effect of amending the definition of "Requisite Lenders."

Defendants contend that the motion court erroneously applied different standards to the third and fourth amendments to the credit agreement. The third amendment—like the fourth—changed the definition of "Term Loan Exposure," and plaintiffs have not taken the position that the third amendment required unanimous lender consent. However, the third amendment did not adversely affect the lenders because it prevented defendants' term loan exposure from counting toward "any provisions of this Agreement relating to the voting rights of Lenders (including the right of Lenders to consent or take any other action with respect to any amendment, modification, termination or waiver of any provision of this Agreement or the other Credit Documents . . .)." By contrast, the fourth amendment removed this protection for the lenders.

Since section 10.5 (b) says "affected," not "adversely af-

---

**2.** The parties have cited Georgia law on this issue, so we assume, without deciding, that Georgia law governs whether CIT was plaintiffs' agent.

fected," it may be, strictly speaking, that the third amendment required unanimous lender consent but that the lenders failed to insist on this requirement. However, given the no-waiver clause of the credit agreement, the lenders' failure to insist on unanimous consent for the third amendment does not prevent plaintiffs from insisting on unanimous lender consent for the fourth amendment.

Defendants contend that, if a change in the definition of "Term Loan Exposure" had the effect of amending the definition of "Requisite Lenders," it would have been unnecessary for section 10.5 (b) (ix) to mention "Pro Rata Share," because "Pro Rata Share" is part of the definition of "LC Exposure," and "LC Exposure" is part of the definition of "Requisite Lenders." However, it was reasonable for the drafter(s) of section 10.5 (b) (ix) to mention "Pro Rata Share" directly instead of relying on "Pro Rata Share" being indirectly embedded in the definition of "Requisite Lenders."

Since plaintiffs allege that the fourth amendment is void ab initio, the motion court correctly declined to give effect to the fourth amendment's severability clause (*see DeSola Group v Coors Brewing Co.*, 199 AD2d 141, 142 [1st Dept 1993]; *see also Matter of Wilson*, 50 NY2d 59, 66 [1980]).

Defendants failed to raise a triable issue of fact whether plaintiffs are estopped to contest defendants' requisite lender status, since they did not show that plaintiffs misrepresented or concealed a material fact or that they detrimentally relied on plaintiffs (*see BWA Corp. v Alltrans Express U.S.A.*, 112 AD2d 850, 853 [1st Dept 1985]). Nor do defendants need discovery on estoppel, since they are obviously aware of their own conduct and plaintiffs' conduct toward them.

Notwithstanding the no-waiver clause in the credit agreement, defendants contend that plaintiffs' conduct raises a triable issue of fact whether they waived their right to challenge defendants' status as requisite lender (*see Simon & Son Upholstery v 601 W. Assoc.*, 268 AD2d 359, 360 [1st Dept 2000]; *see also Excel Graphics Tech. v CFG/AGSCB 75 Ninth Ave.*, 1 AD3d 65, 70 [1st Dept 2003], *lv dismissed* 2 NY3d 794 [2004]). With respect to plaintiff Spectrum Investment Partners, L.P., defendants have shown only "passive acceptance" of their efforts to become requisite lender (*see Simon & Son*, 268 AD2d at 360). However, with respect to Black Diamond, defendants have shown "active involvement" sufficient to raise an issue of fact as to waiver (*see id.*; *see generally Alsens Am. Portland Cement Works v Degnon Contr. Co.*, 222 NY 34, 37 [1917]). In opposition to plaintiffs' motion, defendants submitted an affidavit saying

that from March through May 2011, Black Diamond sent them "numerous proposals regarding [a] potential transaction [involving Black Diamond], *all of which relied on [defendants'] ability to . . . exercise [their] Requisite Lender powers*" (emphasis added). Defendants' affidavit also said that Black Diamond "was fully aware throughout the summer of 2009[ ] that [defendants] intended to acquire ComVest's majority position in Allied's first-lien debt and become the Requisite Lender" and that "Black Diamond sought to sell its debt position to ComVest while Black Diamond knew ComVest was seeking to sell all of its holdings to [defendants], including the debt ComVest might acquire from Black Diamond." Concur—Friedman, J.P., Acosta, Renwick, Manzanet-Daniels and Gische, JJ.