[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10453
_____

D.C. Docket No. 1:17-cv-04400-WMR

SHEBA ETHIOPIAN RESTAURANT, INC.,
d.b.a.
Queen of Sheba Ethiopian Restaurant,

Plaintiff - Appellant,

versus

DEKALB COUNTY, GEORGIA,
HON JEFF RADER,
HON KATHIE GANNON,
JOSEPH COX,
JOHN JEWETT,
ANDREW A. BAKER,
ZACHARY L. WILLIAMS,
DAVID ADAMS,
all in their individual and official capacities,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 9, 2020)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and LUCK, Circuit Judges.

PER CURIAM:

Sheba Ethiopian Restaurant, Inc. appeals the district court's dismissal of its complaint based on res judicata. Sheba asserted various federal and state law claims seeking damages and injunctive relief against defendants DeKalb County, Georgia (the "County"); County Commissioners Jeff Rader and Kathie Gannon; Chief Operating Officer Zachary Williams; Fire Marshal Joseph Cox; Director of Planning and Sustainability Andrew Baker; Chief Building Officer David Adams; and Fire Inspector John Jewett (collectively the "defendants"). Sheba's claims arose out of the defendants' code enforcement actions and administrative decisions revoking Sheba's business license, certificate of occupancy, and legal non-conforming use status. This was the third action that Sheba brought related to the enforcement actions and administrative decisions, after Sheba voluntarily dismissed the previous two. The district court concluded that the claims in this action satisfied res judicata requirements and thus were barred. After careful review, and with the benefit of oral argument, we affirm in part, reverse in part, and remand to the district court.

## I.     BACKGROUND

### A.     Factual Background

Since 1998, the County has licensed Sheba as a restaurant "entitled to provide dining, alcoholic beverage services, musical entertainment and customer dancing."  Doc. 1 at 2.[1]  Until November 2008, "[a] restaurant providing live entertainment such as dancing and DJs or live music was licensed and classified as an 'eating establishment' under the Alcohol Code, and as a 'restaurant' under the zoning code."  *Id.* at 14.

In November 2008, the County amended its zoning code to reclassify such establishments as "late night establishments" ("LNE") or "nightclubs" and to require that LNEs and nightclubs located within 1500 feet of a residential property procure a special land use permit to open and serve alcohol after 12:30 a.m.  The County defined an LNE as "[a]ny establishment licensed to dispense alcoholic beverages for consumption on the premises where such establishment is open for use by patrons beyond 12:30 a.m.,"  DeKalb County Code of Ordinances ch. 27, art. 9, § 9.1.3, and a "nightclub" as "[a] commercial establishment dispensing alcoholic beverages for consumption on the premises and in which dancing and

---

[1] Citations in the form "Doc. #" refer to district court docket entries.  The facts are taken from the allegations in Sheba's complaint, which we accept as true when reviewing a motion to dismiss.  *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1169 (11th Cir. 2014).

3

musical entertainment is allowed, where music may be live, disc-jockey, karaoke, and/or non-acoustic," *id.*  Although Sheba fell within both definitions, the County did not require it to obtain a special land use permit, instead allowing it to operate as a legal nonconforming LNE.

Sheba alleged that, in December 2016, the County formed a "Late Night Task Force" to "randomly select[] and order[] existing restaurants to complete and submit" a Letter of Entertainment.  Doc. 1 at 12–13.  The County required Sheba to complete such a letter in late 2016 when Sheba filed its annual business license renewal application.  On the form, Sheba indicated that it was a legal nonconforming LNE, and the County approved Sheba's business license.

Over the next few months, the County's task force members—including representatives of the Fire Marshal's Office and the Code Enforcement Division — conducted several code compliance inspections of Sheba.  They cited Sheba for a number of code violations, including overcrowding by exceeding purported occupancy limits, use of sparklers and open flames, failure to comply with orders given, failure to obtain a permit for construction, and operating outside the purposes that Sheba had specified in its Letter of Entertainment.  Sheba alleged that these violations were "petty infractions" and that "[n]one of the alleged violations were a matter of life safety."  *Id*. at 18, 19.

4

In late March 2017, the Fire Marshal issued a "Notice of Fire Hazard" and directed Sheba to cease operations until it received approval to reopen from the Fire Marshal or the Planning and Sustainability Department. This letter, coupled with the above-described citation actions, constituted defendants' enforcement actions against Sheba. As a result of these enforcement actions, Sheba closed the restaurant and corrected the hazards identified. Despite efforts to satisfy the County, including consulting with an architect and submitting appropriate applications to the County's building and fire officials, Sheba did not receive approval to reopen and thus remained closed.

About a month after Sheba received the Fire Marshal's notice, the County made an administrative decision to revoke Sheba's 2016 business license, deny its 2017 business license renewal application, revoke its certificate of occupancy, and terminate its legal nonconforming use status under the zoning code. The County maintained that Sheba's repeated code violations, its change in use, and public safety concerns justified these decisions.

Sheba alleged that its interactions with the County leading to its closure were not unique. Instead, the County's actions were tied to "heightened enforcement of facially-neutral ordinances regulating commercial establishments" to "cripple or terminate" the Ethiopian restaurants in the County's District 2. *Id.* at 22. The County conspired with "certain citizens of the County" to reach this goal.

5

*Id*. Sheba remains closed because of the County's enforcement actions and subsequent administrative decisions.

## B.    Previous Litigation

Shortly after receiving notice of the County's administrative decisions, Sheba filed an action in DeKalb County Superior Court against the County; Cox, in his official capacity as Fire Marshal; Baker, in his official capacity as Director of Planning and Sustainability; and Williams, in his official capacity as Acting Finance Director. *Sheba Ethiopian Rest., Inc. v. DeKalb Cty., et al.*, Case No. 17CV4864-9 (Ga. Super. Ct. Apr. 28, 2017) ("*Sheba I*"). Sheba sought a writ of mandamus, injunctive relief, and a temporary restraining order, "challeng[ing] the actions of the [County] in precipitously shutting down [Sheba's] restaurant/nightclub, . . . and revoking, denying, or terminating all permits and licenses necessary to continued operations." Doc. 26-2 at 3. Sheba sought the issuance of its certificate of occupancy and building permit and the reinstatement of its legal nonconforming LNE status. After an emergency hearing, the court denied Sheba's application for a temporary restraining order. Sheba later voluntarily dismissed the action.

Before voluntarily dismissing the action, Sheba appealed the County's administrative decisions to the Certificate Review Board ("CRB") and the Zoning Board of Appeals ("ZBA"). Sheba appealed the decision to revoke its business

6

license to the CRB and the decision to revoke its certificate of occupancy and grandfathered status as a legal nonconforming LNE to the ZBA.  The CRB reversed the decision as to Sheba's business license and directed the County to issue the license.  The ZBA affirmed the County's decision to revoke Sheba's certificate of occupancy and grandfathered status as a legal nonconforming LNE.

Following these administrative appeals, Sheba filed another action in the DeKalb County Superior Court, this time appealing the ZBA's decision.  *Sheba Ethiopian Rest., Inc. v. DeKalb Cty.*, Case No. 17CV7588-9 (Ga. Super. Ct. July 13, 2017) ("*Sheba II*").  In this case, Sheba filed a petition for writ of certiorari, along with a petition for writ of mandamus and a declaratory judgment action; it also asserted a claim for due process violations under Georgia's constitution. Sheba voluntarily dismissed the petition for a writ of certiorari, the declaratory relief claim, and the due process claim.  The court dismissed the mandamus petition with prejudice.

## C.    Procedural History

Sheba filed this action in the United States District Court for the Northern District of Georgia approximately seven months after it filed *Sheba II* and four months before all the claims in that action were dismissed.  In this action, Sheba sought a declaratory judgment, injunctive relief, and damages under federal and state law, raising seven claims:

7

- Count I: 42 U.S.C. § 1983 Claim under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and corresponding provisions of the Georgia Constitution;

- Count II: 42 U.S.C. § 1983 Claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and corresponding provisions of the Georgia Constitution;

- Count III: 42 U.S.C. § 1983 Claim under the First Amendment to the United States Constitution, and corresponding provisions of the Georgia Constitution;

- Count IV: 42 U.S.C. § 1983 Claim Against All Defendants for Race Discrimination in Violation of 42 U.S.C. § 1981;

- Count V: 42 U.S.C. § 1985(3) Claim Against All Defendants for Conspiracy to Interfere with Civil Rights;

- Count VI: A Writ of Mandamus Claim under O.C.G.A. § 9–6–20 Against Adams to Grant Sheba's Building Permit Application; and

- Count VII: Costs of Litigation and Attorney Fees Under O.C.G.A. § 13–6–11.

The defendants moved to dismiss the federal complaint, arguing that res judicata principles barred Sheba from bringing its claims anew in federal court. Sheba moved to amend the complaint, seeking to supplement its allegations of collusion between a DeKalb County resident and various County officials. The district court agreed with the defendants that res judicata barred Sheba from litigating its claims, and given this bar, any amendment to the complaint would be futile. The court dismissed the complaint, and this appeal followed.

## II.    STANDARDS OF REVIEW

"Barring a claim on the basis of res judicata is a determination of law" that we review *de novo*.  *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir.

1999).  We review a district court's denial of a motion to amend the complaint for an abuse of discretion; however, the court's discretion is cabined by Federal Rule of Civil Procedure 15(a), which requires a court to "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15; *see Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1312 (11th Cir. 2009); *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988).

## III.    DISCUSSION

### A.    Standing

Although the parties have not raised the issue, a question exists as to Sheba's standing to bring its First Amendment challenge (Count III) to § 4.2.32(C) of the DeKalb County Code of Ordinances.  "[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims."  *Dillard v. Baldwin Cty. Comm'rs*, 225 F.3d 1271, 1275 (11th Cir. 2000), *abrogated on other grounds by Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007).  "Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review."  *FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 231 (1990) (internal quotation marks omitted).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife, et al.*, 504 U.S. 555, 560 (1992).  A

9

plaintiff must establish "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Granite State Outdoor Advert., Inc. v. City of Clearwater*, 351 F.3d 1112, 1116 (11th Cir. 2003) (emphasis omitted). Each element is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

"An 'injury in fact' requires the plaintiff to show that he personally has suffered some actual or threatened injury." *Clearwater*, 351 F.3d at 1117 (internal quotation marks omitted) (emphasis omitted). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage, *Lujan*, 504 U.S. at 561, but the complaint will be dismissed if "the plaintiff's standing does not adequately appear from all materials of record," *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

Here, Sheba challenged § 4.2.32(C) on First Amendment grounds, asserting that "the County's definitions of the terms 'restaurant,' 'nightclub,' and 'late night establishment' are vague facially and as applied to Sheba" and "(i) fail to serve or further a substantial governmental interest, (ii) are not unrelated to the censorship

10

of protected speech and expression, and (iii) are not narrowly tailored to avoid unlawful infringement of speech or expression." Doc. 1 at 32. But nothing in Sheba's complaint suggests that it has suffered or will suffer any injury as a result of the application or enforcement of the ordinance. To the contrary, Sheba alleged that, for the entire time it operated, it had legal nonconforming use status and therefore was not subject to the ordinance's requirements. Sheba did not allege that it was ever subject to the ordinance or that it will be subject to the ordinance in the future.

We addressed whether a plaintiff has standing to challenge portions of an ordinance that do not apply to it in *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1272–74 (11th Cir. 2006). In *CAMP*, we held that a plaintiff had standing to challenge on First Amendment grounds only the provisions of the ordinance that affected its activities. *Id.* at 1273. The plaintiff could not maintain claims challenging portions of the ordinance that did not apply to it. *Id*. at 1274. Sheba's First Amendment claim suffers from the same deficiency: Sheba failed to allege any facts showing that the ordinance affected its activities. Indeed, the very relief it seeks—resumption of its status as a legal nonconforming LNE—underscores its lack of standing. Looking only to the complaint on its face, we conclude that Sheba lacks standing to bring its First Amendment challenge to § 4.2.32(C).

11

Having concluded that Sheba lacks standing to bring its First Amendment claim, we now consider whether the district court correctly applied res judicata in dismissing Sheba's remaining claims.

## B.    Res Judicata

In Georgia,[2] "the doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action." *James v. Intown Ventures, L.L.C.*, 725 S.E.2d 213, 215 (Ga. 2012); O.C.G.A § 9–12–40. "Three prerequisites must be met before res judicata will apply: (1) identity of the cause of action; (2) identity of the parties or their privies; and (3) previous adjudication on the merits by a court of competent jurisdiction." *James*, 725 S.E.2d at 215. For res judicata to apply, the plaintiff must have a "full and fair opportunity" to litigate its claims in the prior litigation. *Dep't of Transp. v. Revco Disc. Drug Ctrs., Inc.*, 746 S.E.2d 631, 634 (Ga. Ct. App. 2013).

The defendants contend that the district court properly granted their motion to dismiss because res judicata barred Sheba's claims. They argue that (1) because this case is based on the same facts as Sheba's two previous lawsuits, *Sheba I* and *Sheba II*, identity of the cause of action exists; (2) every party in this case was also

---

[2] When determining whether a Georgia state court judgment bars an action in federal court, we apply Georgia law. *Burr & Forman v. Blair*, 470 F.3d 1019, 1030 (11th Cir. 2006).

12

a party or privy to the parties in *Sheba I* and *Sheba II*; and (3) Sheba's voluntary dismissals in *Sheba I* and *Sheba II* operated as an adjudication on the merits. Further, they maintain that because Sheba could have litigated all its claims in the DeKalb County Superior Court and chose not to, it has had a "full and fair opportunity" to litigate. We discuss each res judicata requirement in turn.

### 1.    Identity of the Cause of Action

In *Coen v. CDC Software Corp*., the Georgia Supreme Court defined "cause of action" for res judicata purposes. 816 S.E.2d 670, 675 (Ga. 2018). In doing so, the Court addressed what appeared to be two separate lines of res judicata cases and determined that rather than separate lines, there was merely confusion resulting from "an inconsistency in terminology" that lower Georgia courts employed in analyzing the identity of the cause of action requirement. *Id.* In resolving this inconsistency, the Court held that the "identity of cause of action" requirement is not a broad subject-matter test and defined a "cause of action" as "the entire set of facts which give rise to an enforceable claim with special attention given to the wrong alleged." *Id.* (citation omitted). Where some of the operative facts "are different," the second suit is not founded upon the same cause

13

of action as the first, despite the possibility that the two cases arose from the same transaction and contain similar subject matter. *Id*. at 674.[3]

The County contends that the identity of the cause of action requirement is satisfied because the causes of action alleged in this case arose from the same set of facts as *Sheba I* and *Sheba II*: "the County's code enforcement actions against [Sheba]  (i.e. inspections, citations, and cease use orders); the County's failure to grant [Sheba's] permit applications (i.e. building permit and business license applications); and the County's administrative decisions revoking [Sheba's] certificate of occupancy, business license, and grandfathered status."  Appellee Br. at 15.  But it is not enough that the former and present causes of action arose from the same set of facts; *Coen* instead demands that we examine the wrongs alleged and the necessary facts that gave rise to a cause of action focused on those wrongs. 816 S.E.2d at 675.

---

[3] In *Starship Enterprises of Atlanta, Inc. v. Coweta County*, 708 F.3d 1243, 1254–55 (11th Cir. 2013), we applied the "same subject matter" test in holding that res judicata barred a host of constitutional claims because the claims arose from the same subject matter as a mandamus action in which the plaintiff was granted a writ of mandamus compelling the county to grant its business license.  *Coen*'s reasoning, however, would compel a different result. Whereas the mandamus action in *Starship Enterprises* concerned whether a business license should have been granted under the relevant ordinance, the federal action focused instead on whether the ordinance itself violated the plaintiff's constitutional rights—a distinct wrong.  Thus, with respect to its adoption of "same subject matter" test for the identity of cause of action requirement, *Starship Enterprises* has been superseded by *Coen*, the Georgia Supreme Court's most recent guidance on the identity of cause of action requirement.  *See World Harvest Church, Inc. v. Guideone Mut. Ins. Co*., 586 F.3d 950, 957 (11th Cir. 2009) ("If state law changes or is clarified in a way that is inconsistent with the state law premise of one of our earlier decisions, the prior panel precedent rule does not bind us to follow our earlier decision.").

The County is correct that Counts I, II, and VI, which are focused on whether the County should have reinstated Sheba's legal nonconforming use status or approved its various applications, arose from the same set of facts as *Sheba I* and *Sheba II*.  But Sheba's Counts IV and V alleged different wrongs—discrimination based on race and a conspiracy to interfere with civil rights based on racial animus—and relied on a different, broader set of facts than Sheba's other claims.  *See, e.g.*, Doc. 1 at 22 ("Beginning in 2015, Commissioner Rader, acting in concert with the other defendants and certain citizens of the County, began targeting District 2's Ethiopian restaurants for heightened enforcement of facially-neutral ordinances . . . to severely cripple or terminate those businesses."); *id.* at 23–24 (comparing targeting enforcement efforts against Ethiopian establishments in District 2 to lack of enforcement efforts to establishments with "predominately white late-night clientele").  Even though all of Sheba's claims relate to its attempts to regain its legal nonconforming use status, under *Coen* no identity of the cause of action exists between the claims in *Sheba I* and *II* and Counts IV and V in this action.  Because one of the res judicata requirements has not been met, the district court erred in dismissing these counts based on res judicata.[4]

---

[4] After oral argument and while this appeal was pending, the defendants filed a motion asking us to certify questions of state law to the Georgia Supreme Court.  *See* O.C.G.A. § 15–2–9.  In their motion they argued that the text and purpose of O.C.G.A. § 9–11–41(a)(3) suggest, and decisions of the Georgia Court of Appeals hold, that the res judicata principles discussed in

We now consider the remaining res judicata requirements for the remaining claims, Counts I, II, and VI of the complaint.

### 2.    Identity of Parties or Their Privies

Res judicata applies only to the parties to the prior suit and those in privity with them. O.C.G.A. § 9–12–40; *Brown & Williamson Tobacco Corp. v. Gault*, 627 S.E.2d 549, 551 (Ga. 2006). "The term 'party' to an action includes all who are directly interested in the subject matter, and who have a right to make defense, control the pleadings, examine and cross-examine witnesses, and appeal from the judgment." *State Bar of Ga. v. Beazley*, 350 S.E.2d 422, 424 (Ga. 1986). A "privy" is generally defined as "one who is represented at trial and who is in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Brown & Williamson Tobacco Corp.*, 627 S.E.2d at 551.

---

*Coen* do not strictly apply in two-dismissal cases. Thus, in their view, we should seek guidance from the Georgia Supreme Court on *Coen's* effect on two-dismissal cases.

We disagree. Nothing in *Coen* contradicts O.C.G.A. § 9–11–41(a)(3). In fact, although *Coen* and § 9–11–41(a)(3) both concern res judicata generally, each relates to a separate res judicata requirement—*Coen* to identity of the cause of action and § 9–11–41(a)(3) to adjudication on the merits. By applying *Coen* in this case, we follow Georgia law as interpreted by its highest court. We find it unnecessary to certify questions to the Georgia Supreme Court and therefore deny the defendants' motion.

16

Citing cases that apply the law of jurisdictions other than Georgia, Sheba argues that "[a] government official sued in his official capacity is not in privity with himself when sued in an individual capacity for purposes of claim preclusion." Appellant Br. at 30. This argument is meritless.

Under Georgia law, government officials sued in their official capacities are in privity with their government agency. *Brewer v. Schacht*, 509 S.E.2d 378, 382 (Ga. Ct. App. 1998). But it not necessarily true that government officials are in privity with their agency when they are sued in their individual capacities. *See Carson v. Brown*, 824 S.E.2d 620, 620–21 (Ga. Ct. App. 2019) (holding that where government officials were sued in a mandamus action, they were not in privity with their government agency for res judicata purposes because "mandamus is a personal action against a public official, not against the government"). We need not decide, however, whether for res judicata purposes Sheba's individual-capacity claims are akin to the mandamus action in *Carson*.

Sheba alleged that all the defendants undertook a conspiracy against it and other Ethiopian restaurants to drive these businesses out of their district. Georgia law provides that "co-conspirators are considered to be in privity for purposes of res judicata." *Brewer*, 509 S.E.2d at 382 (internal quotation marks omitted and alteration adopted); *see also Oxendine v. Elliott*, 317 S.E.2d 555, 563 (Ga. Ct. App. 1984). Given Sheba's conspiracy allegations, the government officials sued in

17

their individual capacities, too, are in privity with the County. Thus, the identity of parties requirement has been satisfied.

### 3.    Previous adjudication on the merits by a court of competent jurisdiction

Under Georgia law, a second voluntary dismissal operates as an adjudication on the merits, which precludes a plaintiff from filing a third action. *See* O.C.G.A § 9–11–41(a)(3); *Cracker Barrel Old Country Store, Inc. v. Robinson*, 800 S.E.2d 372, 376 (Ga. Ct. App. 2017) ("[A] second voluntary dismissal operate[s] as an adjudication on the merits of her complaint as a matter of law.") After voluntarily dismissing its claims in *Sheba I*, Sheba again voluntarily dismissed its claims in *Sheba II*. Sheba's second dismissal acts as an adjudication on the merits; therefore, this prong of res judicata is satisfied as to the remaining claims.

### 4.    Full and Fair Opportunity to Litigate

Georgia law imposes a final requirement, that the plaintiff had a full and fair opportunity to litigate her claims in the previous action, before the claims may be dismissed based on res judicata. *Fowler v. Vineyard*, 405 S.E.2d 678, 680 (Ga. 1991) ("[T]he party against whom the doctrine of res judicata is raised must have had a full and fair opportunity to litigate the issues."). An opportunity to litigate is only full and fair if it satisfies the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause. *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 480–81 & n.22 (1982).

18

The Due Process Clause requires only that a state's application of res judicata principles affords the parties notice and an opportunity to be heard to avoid an arbitrary deprivation of property. *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1184 (11th Cir. 2017) (en banc). "State courts are generally free to develop their own rules for protecting against the relitigation of common issues or the piecemeal resolution of disputes." *Richards v. Jefferson Cty.*, 517 U.S. 793, 797 (1996).

The Georgia Supreme Court has explained that "it is only where the merits were not and could not have been determined under a proper presentation and management of the case that res judicata is not a viable defense. If, pursuant to an appropriate handling of the case, the merits were or could have been determined, then the defense is valid." *Piedmont Cotton Mills, Inc. v. Woelper*, 498 S.E.2d 255, 256 (Ga. 1998) (emphasis omitted).

Sheba contends that it had no full and fair opportunity to litigate its claims in the prior litigation because (1) it is seeking broader damages and relief than what was sought and what could have been sought in *Sheba II*, and (2) the nature of certiorari proceedings does not provide a full and fair opportunity to litigate constitutional issues. We reject both of these arguments.

As to the first argument, Sheba provides no support for its assertion that the inability to receive a certain type of relief in the form of damages or injunctive

19

relief alone defeats the "full and fair opportunity" requirement. Sheba's argument focuses solely on the type of relief that it could have sought, without any mention of whether the claims tied to that relief were previously adjudicated or could have been previously adjudicated. Thus, this argument fails.

As to Sheba's second argument, in *Narey v. Dean*, 32 F.3d 1521, 1527–28 (11th Cir. 1994), we considered the certiorari process in a different context and concluded that the process—which was similar to the certiorari process for review of ZBA decisions—afforded an adequate opportunity for constitutional claims to be heard. Further, in *DeKalb County v. Post Properties, Inc.*, the Georgia Supreme Court held that "[a] constitutional attack on a zoning classification cannot be made for the first time in the superior court"; rather, it must first be raised before the relevant administrative agency. 263 S.E.2d 905, 908 (Ga. 1980). Sheba's counsel seemingly acknowledged this requirement during the hearing before the ZBA: "That's why you make Constitutional objections[,] to give [the ZBA] an opportunity to determine whether or not it can move forward." Doc. 27-1 at 39. That the appellant did not raise its constitutional claims before the ZBA was a matter of choice, not a deprivation of due process. Given Georgia law's requirement that constitutional attacks on zoning ordinances must be presented to the administrative agency, Sheba's failure to raise these claims before the ZBA forecloses its argument that it had no full and fair opportunity to litigate Counts I,

II, and VI.  The district court therefore did not err in concluding that res judicata

barred the relitigation of these claims.[5]

Finally, we examine whether the district court abused its discretion in

denying Sheba the opportunity to amend its complaint.

## C.    Motion to Amend Complaint

A district court's discretion to deny a plaintiff's motion to amend its

complaint "is severely restrict[ed] by Fed. R. Civ. P. 15(a), which directs that leave

to amend shall be freely given when justice so requires."  *Thomas*, 847 F.2d at 773

(internal quotation marks and citation omitted).  "[W]here a more carefully drafted

complaint might state a claim, a plaintiff must be given at least one chance to

amend the complaint before the district court dismisses the action with prejudice."

*Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).  A district court need not,

however, allow an amendment (1) where there has been undue delay, bad faith,

dilatory motive, or repeated failure to cure deficiencies by amendments previously

allowed; (2) where allowing amendment would cause undue prejudice to the

---

[5] While this appeal was pending, the defendants filed a motion requesting that we take judicial notice of Sheba's voluntary dismissal in *Sheba Ethiopian Restaurant, Inc. v. DeKalb County, Georgia*, Case No. 18CV9838 (Ga. Super. Ct. 2018), in which Sheba sought a writ of certiorari seeking to renew its petition from *Sheba II*.  They argue that the voluntary dismissal provides an additional ground to affirm the district court's judgment that Sheba's claims were barred by res judicata.  Because we have affirmed the district court's determination that res judicata barred Sheba's claims concerning the County's administrative decision, we need not consider the effects of the most recent voluntary dismissal.  Thus, the motion is denied as moot.

21

opposing party; or (3) where amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). It is the last of these requirements that concern us here.

Sheba sought to amend its complaint to add allegations concerning communications between a DeKalb County resident and several government officials that it contends support its allegations of racial discrimination in Counts IV and V. The district court decided that any amendment would be futile in light of its conclusion that res judicata barred those claims. Having determined that the district court erred in applying res judicata to Counts IV and V, however, we conclude that the district court abused its discretion in denying leave to amend. On remand, the district court should reconsider the merits of Sheba's motion to amend.

## IV.    CONCLUSION

For the above reasons, we affirm in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**